# SUPREME COURT OF TEXAS.

## TYLER TERM, 1881.

---

## J. M. Silliman v. T. T. Gammage.

### (Case No. 1080.)

55  362
80  278

55  362
86   79
86  343

55  362
90  313

1. A mortgagor being unable to pay in full the debt, in order to save expenses of foreclosure conveyed the land to the mortgagee in good faith, and for a fair price, though for less than the debt secured, and received the surrender of the note, mortgage and the remainder of his indebtedness. After the date of the mortgage, and before the conveyance to the mortgagee, a purchaser bought the land at execution sale under a judgment rendered after the date of the mortgage. The mortgagor had actual notice of this purchase and sheriff's deed, and the mortgagee, before receiving the final conveyance, had constructive notice of the sheriff's deed from the record thereof. In a suit brought by the purchaser at sheriff's sale to recover the land from the mortgagee, *held*,

(1) As against the mortgagee, the purchaser at execution sale held the superior title and right of possession, but he held it subject to whatever equitable rights the mortgagee still retained, as such.

(2) The mortgage was not merged in the deed.

(3) The rights of the mortgagee were not extinguished and lost by his receiving, under the circumstances, the deed in settlement.

(4) To prevent injustice, equity will keep alive a debt, mortgage or judgment, although in law it may have been satisfied, and the parties so intended.

(5) When the mortgagee acquires the equity of redemption, in whatever way, and, whatever he does with his mortgage, he will be regarded as holding the legal and equitable title separately, if his interest requires this severance. The law will presume the intention to be in accordance with his real interest, whatever he may at the time have seemed to intend.

(6) The mortgagee was entitled in equity to relief, notwithstanding his constructive notice of the sheriff's deed.

(7) In equity the mortgage remained in force for the protection of the mortgagee, except in so far as it may have been satisfied by other security than the land.

APPEAL from Anderson. Tried below before the Hon. Peyton F. Edwards.

The opinion states all facts necessary.

*T. J. Williams, Theodoric G. Jones* and *Fred Barnard & Whorton Branch,* for appellant.

*A. W. Gregg,* for appellee.

I. Benjamin Parker, at the date of his conveyance to Silliman, had no title or interest in the land in controversy. His deed would not relate back to the date of the mortgage, unless said deed was made in execution of the power in the mortgage.

II. A purchaser from a mortgagor may recover the land mortgaged, in trespass to try title against a party holding under a foreclosure sale, to which he (the purchaser from the mortgagor) was not a party. Such foreclosure proceedings do not affect the right of a purchaser prior to the foreclosure proceedings, he not being a party thereto. Morrow *v.* Murphy, 48 Tex., 304; James *v.* Jacques, 26 Tex., 323; Wright *v.* Wooters, 46 Tex., 381.

III. When the mortgagor conveys the land mortgaged to the mortgagee, and the debt and security are both cancelled and the mortgagee takes the warranty deed of the mortgagor, and receives an additional consideration, the mortgage and the debt are merged in the deed. Campbell *v.* Carter, 14 Ill., 286; 1 Powell on Mort., 4, N. B.

IV. Appellee, by the sheriff's deed under execution sale against Parker, acquired the legal title. This legal title became perfect and subject to no equities by reason of the mortgage when said mortgage was discharged. Wright

*v.* Henderson, 12 Tex., 43; Gillelan *v.* Henderson, 12 Tex., 47; Campbell *v.* Carter, 14 Ill., 286.

V. The purchaser of mortgaged land at execution sale, under judgment against the mortgagor, acquires the *legal title,* and he can upon such title recover the land, in trespass to try title, of the mortgagee, when such mortgagee claims said land by virtue of foreclosure proceedings, to which the purchaser from the mortgagor was not a party. Such purchaser is entitled to all the notice to which the mortgagor would be entitled.

GOULD, ASSOCIATE JUSTICE.— This action of trespass to try title was brought by Gammage to recover of Silliman seven hundred and seventy-nine and three-tenths acres of the John Parker headright survey. The facts are stated in the special findings of the district judge, to whom the case was submitted, and are substantially as follows:

On December 22, 1874, Ben Parker, being the owner of the land, mortgaged one thousand acres of the John Parker survey, including the land in controversy, to secure his note for $500 to Silliman, due six months thereafter, drawing interest at the rate of five per cent. a month, the mortgage containing a power of sale, and being duly recorded. In July, 1876, one Longeton recovered a judgment against Ben Parker, under which the land in controversy was sold as Parker's property, and was bought by Gammage August 7, 1877, for $25. The additional findings are given in the language of the presiding judge:

"On the 17th of June, 1879, within less than four years from the time the note for $500 was due, hence before the same was barred by limitation, Ben Parker, the mortgagor, made a deed to Silliman, conveying to him the one thousand acres of the John Parker, Sr., headright, of which the land sued for is a part, and also two hundred and fifty acres of the Jesse Gibson league, situated in Anderson county. This deed conveys the land mentioned

with general warranty of title, and the testimony shows that at the date of this deed the debt secured by the mortgage amounted to $1,845, and that the land conveyed, one thousand acres of the Parker headright and two hundred and fifty acres of the Jesse Gibson survey, making twelve hundred and fifty acres, was worth at a fair value about $1,250; that the land was taken by Silliman in full payment of his mortgage and debt, to save expense in proceeding on the mortgage, or by suit in court, and that Parker was unable to pay more than the land conveyed, and Silliman surrendered his note, mortgage and the balance of his indebtedness over and above the value of the land, to Parker at the time this deed was executed; and this transaction was in good faith and for a fair price. That Gammage was not a party to, or consulted about this transaction between Parker and Silliman, and Parker at the time had direct notice from Gammage of Gammage's purchase and deed, but Silliman had no notice except the constructive notice of the record of the deed.

"Upon these facts the court finds the law to be, that the mortgage of defendant was merged in the deed from Parker, and that the plaintiff has the superior title, and renders judgment for the plaintiff."

In his pleadings the defendant stated the facts, and claimed that under them he had the better title and right of possession, but, in the event the court held otherwise, claimed a mortgage lien for the note and interest, asked that "said lien be enforced, and that he have judgment for said sum of money against said Ben Parker, and said land be ordered to be sold, and that said Ben Parker be cited to appear in this case and answer, etc., and for all proper judgment."

As we have seen, the court disregarded this part of the answer, holding that the mortgage was merged in the deed, and thereupon gave judgment in favor of Gammage for the land sued for.

Counsel for appellant insist that, under the facts, Silliman had the superior title. In this state the mortgagor is regarded as the real owner, and until foreclosure entitled to the possession of the mortgaged premises. By the execution sale that ownership and right of possession vested in Gammage, subject to Silliman's mortgage. Wright *v.* Henderson, 12 Tex., 43; Duty *v.* Graham, 12 Tex., 427; Mann *v.* Falcon, 25 Tex., 271; Buchanan *v.* Monroe, 22 Tex., 537.

A foreclosure and sale, thereafter had, in a proceeding against Parker, without making Gammage a party, would have left Gammage's title and right of possession unimpaired. Preston *v.* Breedlove, 46 Tex.; Morrow *v.* Morgan, 48 Tex., and numerous subsequent cases.

So, the voluntary deed by Parker to Silliman, made without Gammage's assent, could not affect his title or right of possession, whatever may have been its effect as between the parties thereto. As against Silliman, Gammage continued to hold the superior title and right of possession, but held subject to whatever rights as mortgagee yet remained to Silliman, if any.

Strictly, the mortgage was not merged in the deed, as in case where a greater and less estate meet in the same person; for, by the execution sale and sheriff's deed, Parker had been divested of his entire interest, and his deed to Silliman, although it might as against himself have the same effect as a foreclosure sale, conveyed no greater estate in which the mortgage could merge. But we understand the court to find substantially, that under the facts Silliman's rights as creditor and mortgagee were totally satisfied, extinguished and lost; and it is not to be denied that numerous authorities, in cases strictly of merger, are supported on reasons which seem equally applicable to cases where the debt and mortgage have been in any way extinguished. Those authorities hold that the intention of the parties is the controlling consider-

ation; and in this case, because Silliman had accepted the deed in full satisfaction of his debt and had surrendered up the note and mortgage, would infer that he did not intend for any purpose to keep the mortgage alive. See Campbell v. Carter, 14 Ill., 286, citing and discussing numerous cases; amongst others, Forbes v. Moffatt, 18 Ves., 384; James v. Johnson, 5 Johns. Ch., 417; Hatch v. Kimbal, 16 Me.; Gibson v. Crehore, 3 Pick., 475. See also 1 Powel on Mortgages. But there are other authorities supporting a different view of the law, one which we think more consistent with the principles of equity, and more in accord with the course of decision in this state. In the case of Stanton v. Thompson, 49 N. H., 272, the authorities were largely discussed, and the court say: "We think it may be deduced from the authorities quoted, that when the estates of the mortgagee and mortgagor are united in the former, he has in equity an election to keep the mortgage title on foot, and that whenever it is his interest, by reason of some intervening title or other cause, that the mortgage should be upheld as a source of title, it will not at law be regarded as merged. This is based upon the presumption as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and it is no matter whether the parties, through ignorance of such intervening title or through inadvertence, actually discharged the mortgage and cancelled the note, and really intended to extinguish them; still, on its being made to appear that such intervening title existed, the law would presume conclusively that the mortgagee could not have intended to postpone his mortgage to the subsequent title." In a recent treatise on mortgages the law is thus summed up: "It may therefore be deduced from the authorities, as a general rule, that when the mortgagee acquires the equity of redemption, in whatever way,

and whatever he does with his mortgage, he will be re-
garded as holding the legal and equitable titles separately,
if his interest requires this severance. The law presumes
the intention to be in accordance with his real interest,
whatever he may at the time have seemed to intend."
1 Jones on Mortg., sec. 873.

In the case of Monroe v. Buchanan, where there had been
an invalid trust sale, at which, however, the purchase
money had been paid and the note delivered up, this court
says: "The lot was still chargeable with the debt; the
lien upon it was not extinguished, and equity required, if
necessary that justice might be done all parties, that the
note, although lost or destroyed, and the mortgage, should
be recognized as a subsisting and valid charge upon the
lot. It is a familiar maxim, that equity will hold that
as having been done which should have been done; and
it is equally true, that, in proper cases for its application,
the converse of this proposition is as well established,
and will hold that which should not have been done as
still unperformed." 27 Tex., 246.

A class of cases, involving the same principle, that, to
prevent injustice, equity will keep alive a debt, mortgage
or judgment, although in law it may have been satisfied
and the parties at the time so intended, is where there have
been sales under decrees foreclosing liens, without mak-
ing a subsequent vendee or mortgagee a party. This
court has uniformly intimated its opinion that the pur-
chaser, though he be himself the mortgagee or lien-holder,
might still, in a proceeding with proper parties, have the
premises resold, the first sale and the satisfaction of the
debt thereby being set aside or disregarded; the object
being that equity might still be done between all parties.
Pitman v. Henry, 50 Tex., 364–5; Carter v. Attoway, 46
Tex., 111; Jemison v. Halbert, 47 Tex., 190.

To the same effect are Besser v. Hawthorne (7 Oregon,
131), and Hollister v. Dillon, 7 Ohio St., 197. In the latter

case the mortgagee had obtained judgment for his debt without subjecting the land, and at an execution sale under that judgment became himself the purchaser. In consequence of intervening rights, no title passed by this sale; but the court denied that such a sale could operate a payment of the debt for the benefit of those who had purchased subject to the mortgage. It says: "Such a sale of mortgaged property to the mortgagee cannot operate to deprive him of rights existing anterior to and independent of the judgment. That if such a mistake does not on the one hand lay a foundation for equitable relief, it does not, on the other, give any advantage to the debtor, when set up as a defense in a suit brought upon the mortgage, over which a court of equity has unquestioned jurisdiction."

The case of Jemison v. Halbert is one much in point, and fully supports the conclusion that the court erred in holding the mortgage extinguished as to Gammage. See also Robinson v. McWhirter, 52 Tex., 201.

In the present case Silliman acted in ignorance of the existence of Gammage's title, and therefore labored under a mistake of fact, and notwithstanding he for some purposes had constructive notice, our opinion is that equity would give him relief.

For the purpose of protecting Silliman against the intervening claim of Gammage, the court should have treated the mortgage as in force, except so far as the secured debt had been paid by the conveyance of lands not embraced in the mortgage. This question is directly made in the assignments of error, but can hardly be said to be distinctly presented in the briefs of counsel for appellant. We have regarded it, however, in view of its fundamental nature in reference to the rights of the parties, as sufficiently before us. It was unnecessary to make Parker a party. Monroe v. Buchanan, supra. No judgment could be rendered against him.

In a cross-assignment of errors, appellee seeks to present a question growing out of the exclusion of a tax title offered in evidence by him. The tax title was one originating under the present constitution, and its admissibility and effect under the provisions of. that instrument are questions of no little importance. In the original brief of counsel for appellee no notice is taken of it, nor is it noticed in the briefs of counsel for appellant. There is a single amended brief of appellee presenting this cross-assignment of error. Under the circumstances we feel justified in pretermitting any opinion on that question. The judgment is reversed and the cause remanded.

Reversed and remanded.

[Opinion delivered October 25, 1881.]