GRUBBS et al. v. EDDLEMAN et al.
(No. 6957.)

(Court of Civil Appeals of Texas. Galveston. June 21, 1915. Rehearing Denied Oct. 14, 1915.)

1. INDEMNITY &=6 — RIGHT OF ACTION — BILLS AND NOTES.

A purchaser of land borrowed money to make the initial payment, giving therefor a note upon which plaintiffs were indorsers. Subsequently he executed a note to indemnify plaintiffs, secured by a deed of trust upon the premises purchased. Plaintiffs paid the note upon which they were indorsers, but defendant failed to pay the indemnity note. Held, that plaintiffs were entitled to judgment against defendant on the indemnity note for such a sum as they paid to the holder of the original note and to a foreclosure of the trust deed.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 7, 9, 18, 19; Dec. Dig. &=6.]

**2. VENDOR AND PURCHASER ☞260—RIGHTS OF VENDOR—VENDOR'S LIEN—PRIORITY.**

A purchaser of land borrowed money to make the initial payment, giving therefor a note upon which plaintiffs were indorsers, and also giving vendor's lien notes for deferred payments, some of which passed into the hands of one of the defendants. To indemnify plaintiffs as to the original note, the purchaser executed to them the note sued on, and gave a trust deed on the property as security therefor. Subsequently he deeded the land to the holder of the vendor's lien notes, who assumed the payment thereof. The indorsers of the original note, having paid it, brought suit on the indemnity note and for foreclosure of the trust deed. *Held*, that the execution and record of the indemnity note and trust deed created a lien on the original purchaser's equity of redemption which plaintiffs were entitled to foreclose, subject to the superior lien of the holder of the vendor's lien notes, who by his purchase of the land and surrender of the notes did not lose his equity in the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. ☞260.]

**3. VENDOR AND PURCHASER ☞260—RIGHTS OF VENDOR—VENDOR'S LIEN—PRIORITY.**

Where a purchaser of property executed a note secured by a deed of trust to indemnify plaintiffs, who had advanced money to the purchase price, and the holder of vendor's lien notes given for the remainder of the purchase price subsequently purchased the property, such latter purchaser had no lien superior to the lien of plaintiffs for improvements placed by him on the property; he having constructive notice of their lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. ☞260.]

**4. VENDOR AND PURCHASER ☞263—RIGHTS OF VENDOR—LIENS.**

Where the purchaser of property executed a note secured by deed of trust on the property to indemnify indorsers upon a purchase-money note, such lien was not destroyed by a sale subsequently made by him in consideration of the vendee's assumption of the original vendor's lien notes.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 696, 697; Dec. Dig. ☞263.]

Appeal from District Court, Orange County; A. E. Davis, Judge.

Action by L. T. Grubbs and others against J. P. Eddleman and another. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

Bisland & Bruce, of Orange, for appellants. Holland & Holland, of Orange, for appellees.

LANE, J. That the nature of this case and the transactions leading up to the bringing of this suit may be readily understood, we here make a brief statement of such transactions as we gather them from the fact findings of the trial court; there being no statement of facts filed with the record.

On March 19, 1909, J. P. Eddleman desired to purchase lots 1, 2, 3, and 4, block 51, of the amended Sheldon survey to the city of Orange, from Mary C. Harmon and husband, Jesse Harmon. For the purpose of procuring the cash payment demanded by the Harmons he borrowed from George Call $1,020,

for which he executed his note, with George A. Foreman, H. W. Bland, L. T. Grubbs, and John Burton, plaintiffs herein, as indorsers thereon. On the 22d day of March, 1909, said Eddleman purchased said lots from the Harmons, which the Harmons conveyed to him by a general warranty deed reciting the payment of $1,000 cash and the execution and delivery by said Eddleman to them of one note for $800, due one year after date, one note for $1,350 due two years after date, and one note for $1,350 due three years after date, all bearing 10 per cent. interest per annum, and retaining a vendor's lien on said lots to secure the payment of said notes. The note given Call by Eddleman was renewed, with these plaintiffs as indorsers, and the last renewal was due January 18, 1913, on which date the Eddleman note was taken up and satisfied by the plaintiffs in this cause. W. H. Stark came into possession of the first two vendor's lien notes in the due course of business, by indorsement, before maturity. On September 28, 1909, Eddleman, for the purpose of securing these plaintiffs as indorsers on the $1,020 note given George Call, executed and delivered to them a note for $1,000, due one year after date, and secured the same by a deed of trust of that date on the lots conveyed to him by Harmon and wife. On March 28, 1911, J. P. Eddleman, by general warranty deed, conveyed this property to W. H. Stark, the consideration named in said deed being $1 and the assumption of the three vendor's lien notes given by Eddleman to Harmon and wife, which notes are fully described in the deed of March 22, 1909, from Harmon and wife to Eddleman. After the institution of this suit defendant Stark procured a deed from Harmon and wife to this land; consideration named therein being the release of said Harmon and wife as indorsers on the original Eddleman notes. On the 19th day of January, 1913, the plaintiffs in this case paid to George Call $1,245, being the amount due Call from Eddleman on the loan as originally made. Eddleman has never paid the $1,000 note sued on in this case. The deed of trust given plaintiffs to secure the $1,000 note sued on was filed for record on October 13, 1909, and duly recorded on the 15th day of October, 1909, in the deed of trust records of Orange county, and properly indexed. The $1,000 note sued on in this cause was placed on the hands of attorneys for collection.

Plaintiffs having paid Call $1,245 in satisfaction of the original note which was indorsed by them for the accommodation of Eddleman, and Eddleman having failed and refused to repay the money so paid to Call, they brought this suit against Eddleman upon the note given by him to indemnify them, and for a foreclosure of the deed of trust given by Eddleman to secure said indemnifying note. They also sued defendant W. H. Stark, alleging that he is in possession of the

lots upon which they have a lien, and that he is asserting some kind of claim thereto, and pray for a foreclosure of said lien as against said Stark.

Defendant Eddleman answered: First, by general denial; second, that the note sued upon is but a collateral note given to plaintiffs by him to indemnify them against loss as indorsers of the note given by him to Call, which said note has never been paid by said plaintiffs; and, third, that the note and mortgage sued on was released by plaintiffs and said mortgage returned to him as a release from further liability upon said note and mortgage.

Defendant Stark, in effect, answered that he (Stark) was the owner of the three vendor's lien notes executed and delivered by Eddleman to the Harmons, aggregating $3,200, and interest, etc., given in part payment for the lots involved in this suit, and that he purchased said lots from Eddleman by warranty deed in payment of said notes, and that he thereby got title to the same freed from the lien asserted by plaintiffs, as plaintiffs' lien was obtained from Eddleman, who at the time said lien was given did not hold the superior legal title to the lots in question, but held only secondary to the superior vendor's lien, as evidenced by the deed from the Harmons to Eddleman, and by the notes of Eddleman held by the said Stark, and prayed, however, that in the event the court should hold that he did not hold title to said lots free from the lien held by plaintiffs he be permitted to recover judgment against Eddleman for the amount due upon said vendor's lien notes, and that said property be sold, and that out of the proceeds of such sale he (Stark) be paid: First, the amount due on said notes; second, the sum paid out by him (Stark) for improvements on said lots; and, third, for judgment over against Eddleman upon his warranty.

Plaintiffs by supplemental petition deny all the material defenses of the defendants, and aver that, when Stark purchased the said lots from Eddleman and in part payment therefor assumed the payment of the note executed by Eddleman to Harmon, said note became Stark's debt, and that they were no longer liens on said lots, and therefore Stark holds said lots subject to the lien given by Eddleman to secure the note sued upon, and that therefore they should be permitted to have their judgment against Eddleman for the full amount due on the note sued upon and for a foreclosure of their said lien against both Eddleman and Stark unincumbered by the lien asserted by Stark.

Upon these pleadings, substantially given, the case was tried before the court without a jury. Upon a finding of facts by the trial court substantially the same as hereinbefore set out, the trial judge reached the conclusion, as set out in the transcript, that plaintiffs should not recover as against either of the defendants, Eddleman or Stark, and therefore rendered judgment against plaintiffs and in favor of both of said defendants. From this judgment, all the plaintiffs have appealed.

[1] Appellants' first assignment of error is that the court erred in failing to render judgment for appellants against Eddleman for the amount due upon the note sued upon, for a foreclosure of their lien, for attorney's fees as prayed for, and for costs of suit.

The findings of fact of the court, which are not challenged by either party, are that the note for $1,020 given by Eddleman to Call was indorsed by plaintiffs and was renewed with said plaintiffs as indorsers for Eddleman on January 18, 1913, at which time the plaintiffs paid Call the sum of $1,245, the amount then due upon the same; that said payment was made for Eddleman; that on September 28, 1909, Eddleman, for the purpose of securing plaintiffs as indorsers on the $1,020 note given by him to Call, executed and delivered to plaintiffs a note for $1,000 due one year after date (being the note sued on), and to secure payment of the same executed and delivered to plaintiffs a deed of trust of that date on the lots conveyed to him by the Harmons; that Eddleman has never paid the $1,000 note sued on in this case; that said deed of trust was promptly and properly recorded on the 15th day of October, 1909.

We are unable to understand upon what theory the trial court rendered judgment in favor of defendant Eddleman against plaintiffs under the foregoing fact findings. The facts found by the court not only warrant, but demand, that judgment be entered for plaintiffs against Eddleman on the note sued for, for such a sum as plaintiffs paid to Call in satisfaction of the original note of $1,020 given by Eddleman to Call and which plaintiffs had indorsed for the accommodation of Eddleman, and for a foreclosure of their lien upon the lots in question evidenced by the deed of trust executed by Eddleman and delivered to them. Therefore appellants' first assignment is sustained, and judgment as above indicated will be here rendered for plaintiffs.

[2] We now come to appellants' second and last assignment, which is, in substance, that the court erred in not rendering judgment foreclosing plaintiffs' lien on the lots in question against defendant W. H. Stark, free from any superior claim of said Stark. Appellants' proposition under this assignment is that, as Stark had purchased and become the owner of the original purchase-money notes executed and delivered by Eddleman to the Harmons in part payment for said lots, and had thereafter purchased said lots from Eddleman, and in part payment therefor agreed to and did assume the payment of said notes owned by him, said notes became Stark's debt, and the lien upon the property which had existed by virtue of

said purchase-money notes was released, and appellants' deed of trust lien is now a lien upon said lots freed from former vendor's lien. To this proposition we cannot fully agree. The execution, delivery, and record of the deed of trust of Eddleman to plaintiffs on the 28th day of September, 1909, and the 15th day of October, 1909, respectively, created a lien upon Eddleman's equity of redemption in the lots involved in this suit, and plaintiffs (appellants), under their pleadings and the facts proven, as shown by the fact findings of the trial court, were entitled to a judgment against Eddleman as prayed for and a foreclosure of their lien on the property as against both Eddleman and Stark, subject, however, to Stark's superior lien held by him as owner of the original vendor's lien notes given by Eddleman to the Harmons, and by them transferred to Stark. Silliman v. Gammage, 55 Tex. 365; McDonald v. Miller, 90 Tex. 309, 39 S. W. 89; Gamble v. Martin, 129 S. W. 387; Rodgers v. Houston, 60 S. W. 445; Avery v. Loan Co., 62 S. W. 793.

[3] Stark, however, would have no lien superior to the lien of plaintiffs for improvements placed by him on the property. He had constructive notice of plaintiffs' lien, and therefore whatever improvements he put upon the property were put there at his own risk, and must go with it. Hence, even if there were proof of any improvements made, such proofs would not affect the case. McDonald v. Miller, 90 Tex. 309, 39 S. W. 89.

In support of the foregoing proposition we cite the case of Silliman v. Gammage, 55 Tex. 365. In that case it is shown that one Ben Parker was the owner of a tract of land; that on December 22, 1874, he borrowed $500 from one Silliman, for which he executed and delivered to Silliman his promissory note, payable to Silliman six months after date. To secure said note Parker mortgaged to Silliman his said land, which mortgage was promptly and properly recorded. In July, 1876, one Longeton recovered a judgment against Parker, under which said land was sold as the property of Parker. At said sale one Gammage became the purchaser of the land. On June 17, 1879, while the debt and mortgage of Silliman were still valid, subsisting obligations, Parker, the mortgagor, sold the land to Silliman in full satisfaction and discharge of the debt and mortgage of Silliman; the real and true value of the land being, however, less than the amount due Silliman. Silliman took this conveyance to the land to save the expense of making sale under the power given in said mortgage or through the court. Parker being unable to pay more than the land conveyed, Silliman surrendered his said note, mortgage, and the balance of his indebtedness over and above the value of the land to Parker at the time he conveyed the land to Silliman. At the time of this sale Parker knew that Gammage had bought the land at the sale under Longeton's judgment, but he was not consulted about the transaction. Gammage brought suit against Silliman for the land, and upon the facts as above stated the trial court held that the mortgage of Silliman was merged in the deed of Parker to him, and that Gammage had the superior title to the land, and rendered judgment for him for same. On an appeal from such judgment to the Supreme Court Judge Gould, in speaking for the court in that case, says:

"In his pleadings the defendant [Silliman] stated the facts, and claimed that under them he had the better title and right of possession, but, in the event the court held otherwise, claimed a mortgage lien for the note and interest, asked that 'said lien be enforced, and that he have judgment for said sum of money against said Ben Parker, and said land be ordered to be sold, and that said Ben Parker be cited to appear in this case and answer, etc., and for all proper judgment.' As we have seen, the court disregarded this part of the answer, holding that the mortgage was merged in the deed, and thereupon gave judgment in favor of Gammage for the land sued for.

"Counsel for appellant insists that, under the facts, Silliman had the superior title. In this state the mortgagor is regarded as the real owner, and until foreclosure, entitled to the possession of the mortgaged premises. By the execution sale that ownership and right of possession vested in Gammage, subject to Silliman's mortgage. Wright v. Henderson, 12 Tex. 43; Duty v. Graham, 12 Tex. 427 [62 Am. Dec. 534]; Mann v. Falcon, 25 Tex. 271; Buchanan v. Monroe, 22 Tex. 537. A foreclosure and sale thereafter had, in a proceeding against Parker, without making Gammage a party, would have left Gammage's title and right of possession unimpaired. Preston v. Breedlove, 45 Tex. 47, Morrow v. Morgan, 48 Tex. 304, and numerous subsequent cases. So the voluntary deed by Parker to Silliman, made without Gammage's consent, could not affect his title or right of possession, whatever may have been its effect as between the parties thereto. As against Silliman, Gammage continued to hold the superior title and right of possession, but held subject to whatever rights as mortgagee yet remained in Silliman, if any.

"Strictly, the mortgage was not merged in the deed, as in case where a greater and less estate meet in the same person; for by the execution sale and sheriff's deed Parker had been divested of his entire interest, and his deed to Silliman, although it might as against himself have the same effect as a foreclosure sale, conveyed no greater estate in which the mortgage could merge. But we understand the court to find substantially that under the facts Silliman's rights as creditor and mortgagee were totally satisfied, extinguished, and lost; and it is not to be denied that numerous authorities, in cases strictly of merger, are supported on reasons which seem equally applicable to cases where the debt and mortgage have been in any way extinguished. Those authorities hold that the intention of the parties is the controlling consideration, and in this case, because Silliman had accepted the deed in full satisfaction of his debt and had surrendered up the note and mortgage, would infer that he did not intend for any purpose to keep the mortgage alive. * * *

"But there are other authorities supporting a different view of the law, one which we think more consistent with the principles of equity, and more in accord with the course of decision in this state. In the case of Stantons v. Thompson, 49 N. H. 272, the authorities were largely discussed, and the court say: 'We think

it may be deduced from the authorities quoted that, when the estates of the mortgagee and mortgagor are united in the former, he has in equity an election to keep the mortgage title on foot, and that whenever it is his interest, by reason of some intervening title or other cause, that the mortgage should be upheld as a source of title, it will not at law be regarded as merged. This is based upon the presumption, as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security; and it is no matter whether the parties, through ignorance of such intervening title or through inadvertence, actually discharged the mortgage and canceled the note, and really intended to extinguish them. Still, on its being made to appear that such intervening title existed, the law would presume conclusively that the mortgagee could not have intended to postpone his mortgage to the subsequent title.' In a recent treatise on mortgages the law is thus summed up: 'It may therefore be deduced from the authorities, as a general rule, that when the mortgagee acquires the equity of redemption, in whatever way, and whatever he does with his mortgage, he will be regarded as holding the legal and equitable titles separately, if his interest requires this severance. The law presumes the intention to be in accordance with his real interest, whatever he may at the time have seemed to intend.' 1 Jones on Mortg. § 873.

"In the case of Monroe v. Buchanan [27 Tex. 246], where there had been an invalid trust sale, at which, however, the purchase money had been paid and the note delivered up, this court says: 'The lot was still chargeable with the debt. The lien upon it was not extinguished, and equity required, if necessary that justice might be done all parties, that the note, although lost or destroyed, and the mortgage, should be recognized as a subsisting and valid charge upon the lot. It is a familiar maxim that equity will hold that as having been done which should have been done; and it is equally true that, in proper cases for its application, the converse of this proposition is as well established, and will hold that which should not have been done as still unperformed.'

"A class of cases involving the same principle, that, to prevent injustice, equity will keep alive a debt, mortgage, or judgment, although in law it may have been satisfied and the parties at the time so intended, is where there have been sales under decrees foreclosing liens, without making a subsequent vendee or mortgagee a party. This court has uniformly intimated its opinion that the purchaser, though he be himself the mortgagee or lienholder, might still, in a proceeding with proper parties, have the premises resold, and the first sale and the satisfaction of the debt thereby being set aside or disregarded; the object being that equity might still be done between all parties. Pitman v. Henry, 50 Tex. 364, 365; Carter v. Attoway, 46 Tex. 111; Jemison v. Halbert, 47 Tex. 180. To the same effect are Besser v. Hawthorn, 3 Or. 131, and Hollister v. Dillon, 4 Ohio St. 197. In the latter case the mortgagee had obtained judgment for his debt without subjecting the land, and at an execution sale under that judgment became himself the purchaser. In consequence of intervening rights, no title passed by this sale; but the court denied that such a sale could operate a payment of the debt for the benefit of those who had purchased subject to the mortgage. It says: 'Such a sale of mortgaged property to the mortgagee cannot operate to deprive him of rights existing anterior to and independent of the judgment; that, if such a mistake does not, on the one hand, lay a foundation for equitable relief, it does not, on the other, give any advantage to the debtor, when set up as a defense in a suit brought upon the mortgage, over which a court of equity has unquestioned jurisdiction.'

"The case of Jemison v. Halbert is one much in point, and fully supports the conclusion that the court erred in holding the mortgage extinguished as to Gammage. See, also, Robinson v. McWhirter, 52 Tex. 201.

"In the present case Silliman acted in ignorance of the existence of Gammage's title, and therefore labored under a mistake of fact, and, notwithstanding he for some purposes had constructive notice, our opinion is that equity would give him relief. For the purpose of protecting Silliman against the intervening claim of Gammage, the court should have treated the mortgage as in force."

We think from what has been said and from the authorities cited it is clear, without further discussion, that had Stark kept the notes executed by Eddleman in part payment for the property, he would have had a lien thereon, superior to the lien asserted by plaintiffs, to the amount due on said notes, and that by his purchase of the land from Eddleman and the surrender of said notes he did not lose his equity in the property.

[4] We also think it clear that, as Eddleman held the legal title to the property at the time he executed and delivered to plaintiffs (appellants) the note sued upon and the deed of trust on the property, he created a lien in favor of plaintiffs which could not be and which was not destroyed by a sale made by Eddleman to Stark in consideration of Stark's assuming to pay said original vendor's lien notes held and owned by him, and that said lien should be foreclosed as prayed for, to be secondary, however, to the lien of appellee Stark. In every judicial investigation the discovery of truth and justice should be the aim and desire of the court, and if this discovery is made, the paramount effort of the court should be to see that justice is done to all parties to the suit.

After a most careful examination of the record and the law applicable to this case, we have reached the conclusion that the judgment of the trial court should be reversed, and that judgment should be here rendered for appellants against J. P. Eddleman for the sum of $1,245, with interest thereon from the 19th day of January, 1913, at the rate of 10 per cent. per annum until paid, and for 10 per cent. upon the amount above adjudged as attorneys' fees, and for a foreclosure of their lien upon the property in question against both the appellees, Eddleman and Stark, and for all costs of suit incurred by them, and that judgment should be here rendered for appellee W. H. Stark against J. P. Eddleman for the sum of $3,200, the aggregate sum of the vendor's lien notes held and owned by him, dated March 22, 1909, with 10 per cent. interest per annum thereon from the 22d day of March, 1909, until paid, and for 10 per cent. upon the amount so adjudged as attorneys' fees, and for a foreclosure of his said lien on said property, and that appellants and appellee

Stark may have an order for the sale of the property involved in this suit, and that, if said property be sold under such order, the proceeds of such sale shall be applied: First, to the payment of the amount due to Stark upon the judgment here rendered; and, second, if there remains any balance of said proceeds, the judgment here rendered for plaintiffs shall be paid, and any balance remaining after making such payments shall be paid over to Stark. Having reached such conclusion, the judgment of the trial court is reversed, and judgment is here rendered in accordance with such conclusions.

Reversed and rendered.