This is the same cause tried on demurrer, (110 N.C. 10). The demurrer having been overruled, the defendant put in an answer; and certain other persons, to wit, H.W. Lilly and R.T. Gray, executors of E.J. Lilly, W.P. Wemyess, H.W. Lilly and C.L. Bevil, (198) and W.A. Vanstory, all mentioned in the answer as mortgagees of defendant, Thornton's, homestead property, sought to be subjected to the plaintiff's debt, were, on their motion, allowed to come in and were made parties defendant, and adopted the answer of Thornton.
The following issues were submitted to the jury:
1. Is the plaintiff the owner of the debts sued on?
2. What is the value of the property sued for?
On submitting these issues his Honor remarked that if, in the progress of the trial, additional issues were deemed proper by the court, they also would be submitted.
Plaintiff's debt was a judgment rendered in his favor against J. A. Lambeth and A. G. Thornton, in an action brought by Thornton against Lambeth to close a partnership between them, and for an account and *Page 172 
settlement, in which action C.P. Vanstory, a creditor of the firm, was admitted to be made a party defendant, and recovered judgment for $978.20, with interest from 1 April, 1887, which was duly docketed 6 May, 1889, in Cumberland Superior Court. In the same action judgment was rendered in favor of Thornton against Lambeth for $595.56. Neill McQueen, sheriff of Cumberland County, had been appointed receiver in the cause, to take charge and collect the partnership effects — and in favor of Vanstory it was adjudged by the court:
"That C.P. Vanstory recover of said partnership of J. A. Lambeth and A.G. Thornton, trading as J. A. Lambeth, the sum of $978.20, with interest from 1 April, 1887. The receiver will pay over to C.P. Vanstory the sum of money in his hands not in excess of costs and expenses." Thornton v. Lambeth, 103 N.C. 86.
(199) McQueen died in office without complying with the order of the court, so that Vanstory received no part of the partnership funds, neither has he realized anything under an execution issued upon his judgment.
A. G. Thornton, defendant in present case, during the progress of the trial offered evidence tending to prove that at the time of Sheriff McQueen's death there was in his hands, as receiver, after deducting all charges, the sum of $575.75 of partnership funds applicable to plaintiff's judgment, to which Vanstory was entitled under the order of the court, and the defendant A. G. Thornton asked his Honor to submit a third issue to the jury arising under the first article of the answer, viz.:
3. Whether the plaintiff's judgment was satisfied in whole or in part, and if in part, to what amount?
The contention of defendant was that, whether that sum was received or not by Vanstory, yet, being in the hands of the receiver, under the control of the court, and ordered to be paid upon the Vanstory judgment, there was a satisfaction of the judgment pro tanto and an exoneration of the defendant's homestead to that extent.
His Honor dissented from this view of the law, refused to submit the proposed issue, and excluded the evidence as immaterial.
Defendant A. G. Thornton excepted.
The jury responded to the first issue, "Yes," and to the second issue,"More than the homestead."
A new trial was asked for by the defendant Thornton on account of alleged error, as to which exception was taken and noted on the trial.
Motion for new trial refused. Judgment signed and entered of record, conforming to the precedent in Leak v. Gay, 107 N.C. 468. To this judgment the defendant Thornton excepted, claiming that after (200) the payment of the costs and mortgage debts, no part of the *Page 173 
funds arising from the sale of his homestead should be paid to the plaintiff, but the balance should be paid to him. Exception overruled, and defendant Thornton appealed.
The plaintiff also excepted to the judgment, and appealed. His exception is set out in the opinion.
The following is the judgment appealed from:
This cause having been brought to a trial before the judge and a jury at the present term, and the jury having found that the house and lot in Fayetteville, claimed as a homestead by the defendant, is worth more than $1,000 in value:
It is considered and adjudged by the court that said property be exposed to public sale by commissioners hereinafter appointed by the court, for cash, the homesteader electing cash instead of land, after four weeks advertisement in the Fayetteville Observer, at the courthouse door in Fayetteville, who shall apply the proceeds of the sale to the payments of the debts of the defendant, A. G. Thornton, as mentioned in the pleadings, in the following order of priority, after paying —
First — The costs of this cause.
Second — The mortgage debt due the estate of E. J. Lilly, deceased, to his executors, R. T. Gray and W. H. Lilly, to secure note of A. G. Thornton, payable to E. J. Lilly, for $400, dated 30 September, 1889, payable sixty days after date.
Third — The mortgage debt due the estate of E. J. Lilly, deceased, to his said executors, to secure note of A. G. Thornton, payable to E. J. Lilly, for $100, with interest from 4 October, 1889, at eight per cent.
Fourth — The mortgage debt due the estate of E. J. Lilly, deceased, to his said executors, to secure note of A. G. Thornton, payable to E. J. Lilly, for $100, payable thirty days after date — 3 September, 1889.
Fifth — The mortgage debt payable to W.P. Wemyess, transferred to H. W. Lilly, to secure note of A. G. Thornton, for $60, (201) dated 16 December, 1889, payable twenty-five days after date, secured by mortgage of same date by A. G. Thornton and wife, Elsie.
Sixth — The mortgage debt due to H. W. Lilly, to secure note of A. G. Thornton to H. W. Lilly for $625, dated 26 February, 1890, due twelve months after date, with interest after date at eight per cent. Mortgage executed by A. G. Thornton and wife, Elsie, 26 February, 1890. Proved and registered 27 February, 1890.
Seventh — The mortgage due to C. L. Bevil and W. A. Vanstory, to secure note of $311, dated 27 May, 1890, due 1 October, 1890.
Eighth — After payment of the foregoing mortgage debts the commissioners shall reserve for the defendant A. G. Thornton his homestead interest to the amount of $1,000, should there be so much left, *Page 174 
the annual interest upon which sum to be paid to him during life, and to his widow, should his wife survive him, during her life and the minority of their youngest child.
Ninth — The judgment of plaintiff against the defendant docketed 6 May, 1889, for $978.20, with interest from 1 April, 1887, and costs thereon, $14, should there be so much left.
Tenth — The residue, if any, to be paid to defendant.
R.P. Buxton and Thomas H. Sutton are appointed commissioners of sale. Commissions five per cent.
The respective parties are allowed to bid to the extent of their respective interests without paying cash, except so far as will meet the costs and prior claims in the order mentioned.
This case comes to us upon the appeal of the plaintiff, who is the judgment creditor, and of the defendant Thornton, who is the judgment debtor. The mortgagees, who have come into the action of their own motion, since it was last before the Court (110 N.C. 10), and have been made defendants and have adopted the answer of the defendant Thornton, did not appeal.
We will first consider the refusal of his Honor to submit the issue tendered by Thornton relative to the alleged payment, in whole or part, of plaintiff's judgment.
This issue was tendered by him with the evidence which he insisted tended to establish that such payment had been made. He did not contend that he could produce other evidence bearing upon it. It would have been an idle thing to submit such an issue, the burden of which was upon defendant, and at the same time tell the jury that defendant had no evidence to support it.
And his Honor correctly decided that the facts put in evidence did not prove that any payment had been made on the judgment, or that it had been satisfied in whole or in part. There was no offer to prove that plaintiff had actually received from the receiver in Thornton v. Lambeth (103 N.C. 86) any money to be applied on this judgment, or that his failure to get it was due to his own fault or negligence. That receiver was appointed at the instance of the defendant to take charge of the partnership assets (Thornton v. Lambeth, supra), and if, without any neglect on his part, the plaintiff failed to get what the judgment of the court in that cause directed the receiver to pay him, the loss must fall on the defendant (the plaintiff there) whose duty it was to see that the money he owed was in fact paid. *Page 175 
The amount due to plaintiff on his judgment being thus fixed, we come to the consideration of his exception to the judgment, which is as follows: "To this judgment the plaintiff, C.P. Vanstory, excepted, claiming that after the payment of costs his judgment for $978.20, with interest from 1 April, 1887, docketed 6 May, 1889, (203) was entitled to priority over all the mortgage debts, being older, and should be paid in full before any of the proceeds of sale should be applied to any of said mortgages."
And in this connection we will also consider the defendant's exception to this judgment, "claiming that after the payment of the costs and mortgage debts, no part of the fund arising from the sale of his homestead should be paid to the plaintiff, but the balance should be paid to him."
The land, a sale of which is ordered by the judgment appealed from, was allotted to the defendant Thornton as his homestead in April, 1885. The relief which the plaintiff demands is that, for reasons set out in his complaint, there should be "a reappraisement and reallotment of the land and improvements of the defendant, to the end that the excess of the homestead, if any, be ascertained, and be subjected to the satisfaction of plaintiff's judgment."
It seems to have been conceded by the eminent counsel of the defendant that under the law as declared when this cause was here on demurrer (110 N.C. 10), and the allegation of the complaint and answer, and the findings of the jury, the plaintiff was entitled to have the reappraisement and reallotment demanded by him. We wish, however, to expressly exclude the conclusion that a reallotment should be decreed in suits like this one, upon the finding of the jury that the allotted land is worth "more than a homestead"; that is to say, more than one thousand dollars. To accomplish that result, much more must be established by the plaintiff, according to the opinion filed by the late Chief Justice Merrimon in this cause (supra), to which we adhere.
Assuming, then, that the parties to this action (which, by the presence of the defendant mortgagees, has become a suit to (204) foreclose their mortgages as well as to reappraise and reallot the homestead upon the demand of the plaintiff, and for the reasons set out in his complaint) have consented that a sale of the whole lot shall be made, the purchaser acquiring a title free from all of their claims or liens, and that their respective claims to the fund to be brought into court, the proceeds of the sale shall be measured and determined by their respective claims and liens on the land, we are required to determine how that fund shall be distributed.
This agreement, or concession, of the parties, that a sale of the whole lot shall be made without a reallotment of the homestead of Thornton, *Page 176 
involves, of course, the further concession or agreement that what the lot brings over one thousand dollars shall represent what the excess over the homestead would have brought if the homestead had been reallotted, and the excess had then been sold, and it also involves the further concession or agreement that the reallotted homestead would have sold for one thousand dollars.
If, therefore, after the payment of the costs (to the payment of which, first, no party excepts) there shall remain more than one thousand dollars, that excess will represent and stand in the place of the portion of the lot which, upon a reappraisement, would lie outside of the homestead boundaries, and this excess of the fund over one thousand dollars (the homestead) must be applied on the plaintiff's judgment, for it was docketed before any of the mortgages were registered, and it is a first lien on this excess (Gulley v. Thurston, ante, 192), enforceable now because of the reallotment of defendant's homestead. The statute (The Code, sec. 435) makes a docketed judgment a lien on all the land of the debtor in the county where it is docketed from the date of the (205) docketing, and the creditor may immediately enforce his lien so acquired on all the debtor's land outside of the boundaries of the homestead. Such are his rights. They are plain and unmistakable. No act of the debtor can change them, or in any degree impair them. To hold otherwise would be to displace, by our decision, a lien given by the statute, and to put it in the power of a judgment debtor to deprive his diligent creditor of the fruits of his diligence.
We hold, of course, that if, after the full payment of plaintiff's judgment, any part of this excess shall remain, it shall be applied on the mortgage debts according to their priorities.
This brings us to determine what disposition shall then be made of the homestead money, the sum which represents and stands in the place of the newly allotted homestead, and to which none of the parties waive any of their claims or modify in any degree their legal rights.
We must first discuss the relation of the plaintiff to this fund, for it may be that the excess over one thousand dollars will not be sufficient to pay all costs and his judgment.
In some States a docketed judgment creates no lien on the homestead land, but in this State such a judgment creates a lien on all the land of the debtor, both that outside of the homestead boundaries and that within those boundaries, the only difference being that the lien on that which is within the homestead boundaries is not enforceable by execution or other final process until there has come about in some way a termination of the debtor's constitutional exemption rights in this land, which rights, vested in him by the organic law, may be prolonged after his death for the benefit of his widow in some instances and in some for the *Page 177 
benefit of infant children. As we have said, he cannot now enforce (206) his lien on the homestead land, but his debtor cannot displace that lien by any act of his. It is fixed on the land by law, and this Court can only recognize and at the proper time enforce it.
We conclude, therefore, that the plaintiff has a lien on this fund ($1,000) for the payment of such part of his judgment as is not satisfied by the excess over the homestead money, but, if the other parties interested in this fund so insist, he must await the termination of Thornton's exemption rights in this fund before he can get for his own use any part of it. When those rights have terminated, such part of this principal fund as may be necessary will be applied to the satisfaction of the plaintiff's judgment. In the meantime it will be invested as the Superior Court of Cumberland County may direct, and the interest accruing thereon will be applied on the mortgage debts, paying the senior mortgage first and then the next oldest, and so on. Any remainder of the corpus
after satisfaction of the judgment will be used to pay off any balance then due on the mortgage indebtedness. The defendant Thornton can have no part of this fund until both the judgment and the mortgages are paid off in full. He loses the land outside of his reallotted homestead, because it must be devoted to the discharge of the judgment lien thereon. He loses his right to use the homestead land or the money that stands in its place, because by proper deeds he and his wife have assigned that land to the mortgagees; thereby they acquired all his rights to this lot, his homestead estate therein, as it is sometimes called. Adrian v. Shaw, 82 N.C. 474;Simpson v. Houston, 97 N.C. 344. Therefore they take his place in relation to the fund ($1,000) which stands in lieu of the exempt land, and must be allowed to hold that place to the present exclusion of the judgment creditor.
We feel bound to follow the decisions cited above, and others of like import made by our distinguished predecessors, because rights have been acquired and contracts have been made on the faith of those adjudications. To disturb them at this late day would (207) bring about confusion and cause injustice in many instances. We prefer to recall the dicta in Fleming v. Graham, 110 N.C. 374, which seem in conflict with those older cases.
We are not unmindful of the fact that perplexing problems will arise in the adjudication of rights in and titles to lands, to which at one time or another there has attached that peculiar right called a "homestead," whether we adhere to the old rule laid down in Adrian v. Shaw and cases of like import or adopt the new rule foreshadowed in Fleming v. Graham, supra. One thing at least should be distinctly realized: The two rules, on principle, are in direct conflict one with the other. By the one the homestead right or estate, or exemption from execution, *Page 178 
or "advantage," call it by what name we will, is salable or assignable, and the purchaser can hold the land in which he has acquired this right or estate, or exemption from execution, or advantage, to the exclusion of the ordinary judgment creditor of his assignor or seller till that right or estate, or advantage, or exemption from execution, "is over." By virtue of the assignment (usually made in the form of a deed to the land itself, the greater including the less) he gets into the shoes of the homesteader, to use a homely expression. He has bought the privilege of so standing, the privilege of personating before the law and the judgment creditor the "homesteader" himself, quoad the homestead land. And we think that the assignability of this right, as contradistinguished from the land itself, has been distinctly recognized by all the decisions of this Court until that of Fleming v. Graham. It is true that there has been much discussion as to the name that should be applied to this new creation of the law. Justice Dick called it in Poe v. Hardie, 65 N.C. 447, "the estate in the homestead," "a determinable fee," (208) and called its counterpart "the reversionary interest," the two constituting all the estate of the owner of the land. Chief JusticePearson called it "the homestead estate," and its counterpart "the reversion," and notably in Jenkins v. Bobbitt, 77 N.C. 385, though inLittlejohn v. Egerton, 77 N.C. at page 384, he had spoken of the "homestead right" as a quality annexed to land whereby an estate is exempted from sale under execution for debt. Justice Bynum, in Bank v.Green, 78 N.C. 247, defined it as "no new estate," but only "a determinable exemption from the payment of his debts in respect to the particular property allotted to him." And the same Court in Hill v.Oxendine, 79 N.C. 331, distinctly recognized the "homestead" as distinguished from the "reversionary interest," and with equal distinctness conceded the assignability of each of these rights or interests separately.
Smith, C. J., in Markham v. Hicks, 90 N.C. 204, approved the definition or description contained in Bank v. Green, supra, and called attention to the "inadvertent expressions" which had been used in defining the right under discussion; but there was no intimation from him in that case that it was not assignable.
Chief Justice Merrimon, in the case of Jones v. Britton, 102 N.C. 166
(on page 169), speaks of this quality of exemption as an "advantage" which can pass by proper deed from the homesteader to his vendee of the land, and in unmistakable language recognizes that this "advantage" — this exemption from sale, limited contingently — may be acquired and held by the vendee of the land to the postponement of the rights of the judgment creditor. He there emphatically approved the rule laid *Page 179 
down in Adrian v. Shaw, supra, by Justice Ashe, which had been approved with even greater emphasis by Chief Justice Smith on the rehearing of the latter case (84 N.C. 832).
And in Lane v. Richardson, 104 N.C. 642, it is said of (209) homestead land that had been sold by the homesteader that it "retained the quality of the homestead exemption in the hands of the purchaser." In Long v. Walker, 105 N.C. 90, the cases of Wyche v. Wyche, 85 N.C. 96;Barrett v. Richardson, 76 N.C. 429, and Lowdermilk v. Corpening,92 N.C. 333, are cited with approval, and the principle that in this State what is there again called the "reversionary interest" in the homestead land may be owned by one person while the homestead interest or estate is held by another, is distinctly recognized.
In Waples on Homestead and Exemption, p. 299, it is said: "There may be a suspended judgment lien on a homestead; as when the statute allows judgments to be docketed against it but prevents their enforcement during the time the homestead remains exempt, yet allows execution afterwards. Meanwhile, the exemptionist may sell the land on which the benefit rests, subject to the judgment, but also protected for the time being by the suspension of the lien. The purchaser acquires this protection with the land so far as the homestead extends with the land." In support of this the learned author cites Jones v. Britton, supra; Rankin v. Shaw, 94 N.C. 405;Markham v. Hicks, 90 N.C. 204; Wilson v. Patton, 87 N.C. 318, andHinson v. Adrian, 86 N.C. 61.
It is not our privilege to consider the choice between these two rules (that of Adrian v. Shaw and Jones v. Britton establishing the assignability of the homestead estate or right, or advantage, and the one proposed in Fleming v. Graham denying that assignability) as a new question. If such was the case we might find much perplexity in the consideration of the Constitution, which seems to provide for a sale by the homesteader and his wife of the homestead lands, and the statute law, and the decisions of this Court, which beyond all question make a docketed judgment a lien on the homestead land, a provision (210) that is in force in few of the States except this. It may be said in this connection, however, that it would be difficult for one to see what value or efficacy there would be in a power of sale, if the exercise of the power brought to the purchaser only the poor privilege of witnessing an execution sale of his newly acquired land. And in truth it matters not so much what we call as how we protect and enforce this "right" or "estate." It may be that inadvertent expressions have been used in the effort to adapt the nomenclature of the common law to a matter unknown to that system of jurisprudence. But through all the decisions of this Court down to the case of Fleming v. Graham, *Page 180 supra, will be found, we think, upon careful examination, a clear recognition of the fact that this "advantage," as Chief Justice Merrimon
aptly called it, is assignable, and that the purchaser of the land from the homesteader may hold that "advantage." Therefore when we affirm Adrian v.Shaw, Simpson v. Houston, and cases of like import, we are but affirmingJones v. Britton, decided so late as 1889, and, as we think, we go counter to no decision or dictum in the Reports of the decisions of this Court, except what is said in Fleming v. Graham, supra.
If there is to be any present division of this fund between the parties, it must be a matter of arbitration or agreement among themselves, for the courts have no rule by which to determine what exemption rights are worth in cash, their present value, the length of their duration depending on too many contingencies.
Leak v. Gay, 107 N.C. 468, so far as it decides or seems to decide that the lien of a docketed judgment on the debtor's land, whether on an allotted homestead or not, can be displaced by a junior mortgage, is overruled.
(211) The fund arising from a sale of the lot described in the pleadings must be disposed of in accordance with this opinion, unless otherwise agreed by all the parties in interest.
Judgment modified. In plaintiff's appeal there is error. In defendant's appeal there is no error.