## GENERAL BONDING & CASUALTY INS. CO. v. TRABUE et al. (No. 1405.)

(Court of Civil Appeals of Texas. Texarkana. March 3, 1915. Rehearing Denied March 18, 1915.)

1. HOMESTEAD ☞71 — EXCESSIVE CLAIM — "LOT."

The word "lot" or "lots," as used in Const. art. 16, § 51 (Rev. St. 1911, art. 3786), providing that an urban homestead shall consist of a lot or lots not to exceed in value $5,000 at the time of their designation as a homestead, is used in the broad sense to mean an area or piece of ground, and not an artificial subdivision, according to the survey and plot of the city, town, or village; and hence the appropriation of two lots beyond the limit of value is good for the fractional part of the second lot required to make up the value, and the excess only is liable to creditors.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 104; Dec. Dig. ☞71.

For other definitions, see Words and Phrases, First and Second Series, Lot.]

2. HOMESTEAD ☞121 — EXCESSIVE CLAIM — ENFORCEMENT OF LIEN—METHOD OF SALE.

Where an urban homestead claimed on two lots is excessive as to part of the second lot, the excess may be sold under a trust deed by

selling an undivided interest, and the purchaser becomes a tenant in common with the homestead owner, subject to a partition between them.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. ☞121.]

Error from District Court, Panola County; W. C. Burford, Judge.

Action by the General Bonding & Casualty Insurance Company against R. E. Trabue and another. From a judgment rendered, both parties bring error. Affirmed.

The suit is by the insurance company against R. E. Trabue and wife upon their principal promissory note in the sum of $7,-000 and two interest notes secured by a deed of trust upon the east 70 feet of the north half of lot 19 and the south half of lot 18, in the town of Carthage. The prayer was for judgment for the debt, interest, and attorney's fees, and foreclosure of the lien on the property described in the deed of trust. The defendants by answer claimed the property covered by the deed of trust to be exempt as homestead, and interposed a discharge in bankruptcy as a bar to a personal judgment on the note and coupons sued upon. The jury answered that all the premises claimed as a homestead had a naked ground value of $5,775 at the time of its designation as a homestead. The court found the excess of value above $5,000 to be 14.76 per cent. of the total value, and so rendered judgment that, to the extent of an undivided interest of 14.76 per cent., the property described in the petition was subject to the lien created by the deed of trust, and decreed foreclosure of such lien. It was also adjudged that R. E. Trabue was free from personal liability upon the indebtedness sued upon, by virtue of the discharge in bankruptcy. The plaintiff and the defendants both gave notice of appeal, and assign error to have revision and correction of the judgment.

In 1911 R. E. Trabue was, and had been for several years, engaged in the general mercantile business in Carthage, a town of a population of about 2,500. Mr. Trabue is a married man, with a family. In 1902 Mr. Trabue and wife designated as their residence homestead property owned by them in the town of Carthage and comprising a lot of about 1.15 acres, upon which their residence was erected, and another lot of 9 acres used by them for pasture purposes in connection with their home. From 1902 continuously until the execution of the deed of trust in suit they occupied these premises, situated in the town of Carthage, as their residence homestead. This residence property lay in the northern part of the town, and about 300 yards from the courthouse square or principal business center of the town. On July 2, 1904, R. E. Trabue acquired as separate property, and designated as his business homestead, and occupied it as a place of business, property known as the east 70 feet

of the south half of lot 19, in the town of Carthage. On July 19, 1904, R. E. Trabue acquired as community property, and a few months later designated as a part of the business homestead, property in Carthage known as the east 70 feet of the north half of lot 19 and all of the south half of lot 18. The east 70 feet of the north half of lot 19 adjoins on the north the east 70 feet of the south half of the same lot, and the south half of lot 18 adjoins on the north the east 70 feet of the north half of lot 19. After acquiring, on July 19, 1904, the east 70 feet of the north half of lot 19 and all of the south half of lot 18, R. E. Trabue erected upon the two half lots and the east 70 feet of the south half of lot 19 a two-story brick building occupying all of the three half lots, and still standing thereon. After the completion of the building, near the end of the year 1904, R. E. Trabue occupied the same as a place for the exercise of his mercantile business, and designated the same as a part of his business homestead. Until then the south half of lot 18 and the east 70 feet of the north half of lot 19 had not been so occupied. On January 14, 1911, R. E. Trabue made application to the plaintiff in error for a loan of $8,000, offering as security the south half of lot 18 and the east 70 feet of the north half of lot 19. The application was signed and sworn to, and represented that the property covered by the buildings was not then occupied as homestead and was not intended so to be. The questions and answers in respect to the application for loan are in evidence, without dispute, and are made a part of the findings here, and can be taken as a part of the findings without necessity of copying them into this statement. It appears that the plaintiff in error knew, at the time of the loan and taking the deed of trust, that defendant in error was occupying the property for the purposes of his mercantile business. All the evidence being undisputed, except the question of the value of the lots, only the question of value was submitted to the jury in the form of a special issue. The jury made the finding that, at the time R. E. Trabue began to use the south half of lot 18 and the east 70 feet of the north half of lot 19 as his place of business, the market value of the lots claimed to be exempt as homestead, exclusive of improvements, was as follows:

South half of lot 18................$1,750 00
East 70 feet of north half of lot 19.. 1,500 00
East 70 feet of south half of lot 19... 2,000 00
Residence lot...................... 300 00
Pasture lot....................... 225 00

The findings as to value are not challenged in the appeal. The court, in his conclusions of fact concerning the building, found:

"Said two-story brick building consists of its four walls, two floors, and roof, without any partitions dividing it into rooms on either the first floor or the second floor. Its construction is such as to render it capable of physical di-

vision by the erection of partition walls at any place or places."

Locke & Locke and Camp & Camp, all of Dallas, and Brooke & Woolworth, of Carthage, for plaintiff in error. Lasseter & McIlwaine and N. A. Gentry, all of Tyler, and H. N. Nelson, of Carthage, for defendants in error.

LEVY, J. (after stating the facts as above). [1] It appears that the addition to the homestead uses of the north half of lot 19 and the south half of lot 18 made the homestead claimed of the naked ground value of $5,775 when designated, which amount exceeds the value allowable as exempt to the sum of $775. It is insisted by plaintiff in error, under pertinent assignment of error, that the south half of lot 18, which would create an excess, did not constitute a part of the exemption and was subject in its entirety to the lien of the deed of trust. The admirably prepared argument of plaintiff in error is predicated upon the contention that the words "lot or lots," as used in the constitutional provision, intended to confine the premises that should be appropriated and occupied as a homestead to the plotted lots according to the survey and plot of the particular city, town, or village, and that the words should be given such interpretation because of the lack of legislative regulation providing any means for designation of an urban homestead out of premises having a worth exceeding the constitutional valuation. The question presented must depend for solution upon the construction of the words "lot or lots." An urban homestead, as defined by the Constitution, "shall consist * * * of a lot or lots, not to exceed in value $5,000.00 at the time of their designation as the homestead, without reference to the value of any improvements thereon." Article 16, § 51; R. S. art. 3786. In construing the word "lot," as used in laws allowing a lot as urban homestead, courts of some states have given it the meaning of an artificial subdivision for the purpose, according to the survey and plot of the city, town, or village, while other courts have held it to comprehend simply an area or piece of ground, though containing less than a plotted lot. By taking the word "lot" in its broad and popular sense, there is room afforded in such meaning to permit the appropriation to homestead uses of any fractional part as may be subdivided and bounded by the conveyance of the owner out of a plotted lot. As, for instance, the half, third, or fourth part of an entire lot may be appropriated and occupied for homestead purposes and be exempt. And such interpretation would not operate to deprive any owner of only a fractional part of a single plotted lot from the benefit of the homestead exemption. But by taking the word "lot" as meaning and referring to a technical subdivision for the purpose according to the survey and plot of the city, town, or village, there is afforded no room to permit the appropriation to homestead uses of any fractional portion of the plotted lot. And such interpretation would operate to deprive the owner of only a fractional portion of a plotted lot from the benefit of any urban homestead exemption, since his attempted designation would be of an area of ground less than "a lot," according to the plot of such city, town, or village. Holding in view the purposes of the exemption law, and to fully and generally accomplish its purposes, it is concluded that the words "lot or lots" must be taken and construed in the broad sense, as commonly used, of describing simply a piece of ground, without regard to size, entirely located within the confines or plan of the city, town, or village. This construction of the words, as within the letter and spirit of the article, would not, it is thought, cast doubt upon the right of the owner of only a part of a plotted lot, less than the entire lot, coming under the benefit of the exemption. The Supreme Court in Taylor v. Boulware, 17 Tex. 74, 67 Am. Dec. 642, in reviewing the constitutional provision exempting "any town or city lots in value not exceeding two thousand dollars," declared the provision "entitled," to accomplish its purpose, "to liberal construction." And that rule has been generally applied in the numerous cases involving the homestead laws of this state. Holding, as we do, that the words "lot or lots" should be given the broader meaning, it would follow that the fact that a homestead excessive in value has been set apart does not prevent the property designated from having the status of a homestead to the extent of the limit of value. It has been so decided in effect. Hargadine v. Whitfield, 71 Tex. 482, 9 S. W. 475. And the precise contention of plaintiff in error that the south half of lot 18 did not at all become a part of the homestead must, it is concluded, be overruled. So much of the two added lots in evidence became a part of the homestead when designated as would in value fill the measure of $5,000, and was exempt, while the worth of such property above the limit of $5,000 is subjected to the lien executed by the owner. This excess, as found by the jury, was by the court applied to the property covered by the deed of trust, and foreclosure and order of sale were decreed of an undivided interest to the extent of the excess value, fixing the percentage thereof.

[2] Defendant in error by cross-assignment complains of the decree foreclosing an undivided interest to the extent of the excess as being null and void upon the ground that it is in effect foreclosing on part of the homestead itself. As the excess, which is all that is ordered sold, is not exempt as a part of the homestead, it may be subjected to the lien. And the excess being a subject-matter of sale and disposition, the right of the cred-

itor to have sale of the same is not abridged, it is believed, by the fact that such excess or residue may be an undivided parcel of the property. The purchaser under such sale acquires no right or interest in the exempt portion of the property. The purchaser becomes a tenant in common to the extent of his interest with the owner of the homestead property, and this situation results from the designation of an excessive homestead. The purchaser and the owner of the homestead property have a means of partitioning the property in proper equitable proceedings according to the facts and equities of the particular case.

Affirmed.