## HARRISON et al. v. FIRST NAT. BANK OF LEWISVILLE. (No. 9252.)

(Court of Civil Appeals of Texas. Ft. Worth. April 3, 1920. On Motion for Rehearing, June 5, 1920. Further Rehearing Denied July 2, 1920.)

**I. Judgment ⟳585(3)—Subjecting property to lien not bar to action to enforce personal liability.**

A suit to enforce a personal judgment against the land of the judgment debtor *held* not to state the same cause of action as a former suit to subject the property in question to a lien for paving, in which the personal judgment was rendered.

**2. Judgment ⟳715(1)—Determination of issue common to several causes res adjudicata.**

Whenever there is an issue directly involved and common to two causes of action, its determination in the first suit operates as an estoppel and bar to a litigation of it in the second suit.

**3. Homestead ⟳129(2)—Innocent purchaser of vendor's lien note given in simulated sale protected.**

Notwithstanding Const. art. 16, § 50, an innocent purchaser for value of a vendor's lien note, given in a simulated sale of a homestead, acquires the right to enforce the lien.

---

**4. Homestead ⚍214—Finding that purchaser of vendor's lien note, given in a simulated sale, was not innocent not sustained by evidence.**

In an action of trespass to try title, a finding that purchaser of vendor's lien note, given in a simulated sale of a homestead, had notice of facts sufficient to put a person of ordinary prudence upon inquiry, which if pursued would have led to the discovery of the fact that the purported sale was a simulated transaction, *held* not warranted by the evidence.

**5. Homestead ⚍129(2) — Purchaser not charged with knowledge of vendor's agent.**

Purchaser of a vendor's lien note was not chargeable with knowledge of an agent of the seller that the note was given in a simulated sale of a homestead.

**6. Homestead ⚍121—May be sold on foreclosure to satisfy judgment if value exceeds exemption.**

The excess in a homestead over and above the constitutional exemption provided by Const. art. 16, §§ 50, 51, can be subjected to the payment of debts, and, if it becomes necessary to sell the entire homestead for the purpose of segregating the value of the excess from that of the exempted portion, it may be done, such a procedure resulting in a forced sale of the exempted interest only for the purpose of partition; and court did not err in establishing a lien in favor of a judgment creditor upon an excess found by a jury, and foreclosing such lien.

**7. Appeal and error ⚍1073(1)—Direction as to application of proceeds of sale of homestead under judgment harmless error.**

Where jury found value of lot to be $8,000 and improvements $16,000, same being a homestead property, any error of the court in directing that out of the proceeds of the sale of the entire property only $5,000 should be first set apart, and that out of the balance remaining the creditor's debt should be next satisfied to the extent of $3,000, and that the balance remaining should be paid to the owner, was harmless, even upon the theory that seven-eighths of the entire proceeds of the lot and improvements should be first set apart to the owner, and the creditors satisfied out of the balance remaining, there being no suggestion that the property was not worth the respective values fixed by the jury and the debt being less than $1,000.

On Motion for Rehearing.

**8. Homestead ⚍103 — Judgment lien not within operation of constitutional provision making void mortgages, etc.**

A judgment lien does not come within the operation of Const. art. 16, § 50, which provides that no mortgage, trust deed, or other lien on a homestead shall ever be valid, etc.

**9. Homestead ⚍104 — Judgment ⚍743(2) —Judgment a lien after abandonment; judgment that entire property was homestead res adjudicata in subsequent action to enforce personal judgment.**

Where court in an action to foreclose a paving lien, determined that the entire property was the defendant's homestead, the plaintiff in such action was estopped, in a subsequent action to satisfy the personal judgment from claiming that there was an excess over and above the homestead exemption at the time the former judgment was rendered, but a judgment lien attached to all the property as soon as it was abandoned as a homestead.

**10. Homestead ⚍128—Grantee in simulated deed had no title to convey.**

One receiving a fictitious deed of conveyance of a homestead had no power to convey the title to the wife as her separate estate, since no title was vested in him.

**11. Subrogation ⚍14(4)—Purchaser of abandoned homestead held not entitled to subrogation to vendor's lien note assumed by him.**

A purchaser of an abandoned homestead was not entitled to invoke the equitable rule of subrogation, as against the judgment creditors of original grantors of the homestead, by reason of his payment to an innocent purchaser of a note, given in a simulated sale of the homestead to a third person, who reconveyed to the wife; payment of such note being assumed as part of the purchase price to the wife, there being no agreement by any one that he should be subrogated to the rights of the innocent purchaser of the note and lien securing the same.

**12. Judgment ⚍784 — Priorities of liens in case of homestead determined.**

Where at time judgment was rendered for creditor, court determined that all of the judgment debtor's land was within the homestead exemption, and the homestead was abandoned after another creditor had obtained a judgment, the creditor who obtained the second judgment had a prior lien upon any excess over the homestead exemption, but the creditor first obtaining judgment had a first lien upon the balance remaining.

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by James N. Harrison against the First National Bank of Lewisville, the Texas Bitulithic Company, and others. From a judgment for plaintiff, he and the last-named defendant appeal. Reformed and affirmed.

Templeton & Milam, of Ft. Worth, L. M. Dabney, of Dallas, and W. W. Wilkinson, of Ft. Worth, for appellants.

Flournoy, Smith & Storer, of Ft. Worth, for appellee.

DUNKLIN, J. On September 25, 1911, J. D. Hagler purchased a house and lot in the city of Ft. Worth for a recited consideration of $25,000, the true consideration being paid in other property. Hagler was a married man, having a wife and family of several children. Immediately after the purchase he moved into the house and made it his resident homestead. The occupation of the property as a homestead continued until April

29, 1917, when Hagler and wife abandoned the same as a homestead, and moved to Tom Green county, where they acquired another homestead. On April 28, 1916, about one year prior to such abandonment, Hagler and wife made a fictitious, or simulated, transfer of the property to C. O. Crockett. The fictitious transfer contained a recital of a cash payment by Crockett, the grantee, of $10,000 paid in cash, and a promissory note for $15,000, executed by Crockett and payable to the order of Mrs. Cora B. Hagler, wife of J. D. Hagler. The note recited that it was the separate property of Mrs. Hagler, and contained the further stipulation that it was payable five years after date, with option on the part of the maker to pay one-half of the principal at the end of three years, and that it would draw interest at the rate of 8 per cent. per annum, payable annually. In the deed from Hagler and wife to Crockett, and also in the note, a vendor's lien was retained to secure the payment of the note, which was further secured by a deed of trust on the property executed by Crockett to James Harrison, trustee for Mrs. Hagler, and the legal holder of the note. The deed of trust contained the usual provisions for the sale of the property by the trustee for the purpose of paying the debt secured upon default of the maker in the payment of it according to its terms. The note bore the same date as the deed. On the same day it was executed, Hagler and wife sold and conveyed the note, together with the lien securing same, to Mrs. Sallie H. Culberson. The consideration recited in the transfer of the note and lien was $15,000, paid by Mrs. Culberson to Mrs. Hagler, and that amount was in fact paid in cash, the payment being made by James Harrison, acting as agent and attorney for Mrs. Culberson, who was his sister, and upon such payment the note was delivered to Mr. Harrison for Mrs. Culberson. The deed from Hagler and wife to Crockett and the transfer of the note and lien were all delivered and filed for record in the deed records of Tarrant county on April 28, 1916. On the same day, Crockett reconveyed the property in question to Mrs. Cora B. Hagler as her separate property; the consideration recited in the deed being $500 cash, which was not in fact paid, and the assumption by Mrs. Hagler of the $15,000 note above mentioned. This deed of reconveyance was never filed for record until July 13, 1917. Harrison continued to act as agent for Mrs. Culberson, and neither he nor Mrs. Culberson ever learned of the reconveyance of the property by Crockett to Mrs. Hagler until about April 27, 1917, when Harrison called upon Crockett for payment of the first interest installment, and was then informed, for the first time, of such conveyance. On July 6, 1917, more than two months after Hagler and wife had abandoned the property as a homestead and had moved to Tom Green county, they executed a conveyance of the property to James Harrison, in consideration of the assumption by Harrison of the $15,000 note, then outstanding against the property, mentioned above, which was then owned and held by Mrs. Culberson. The deed to Harrison was in the form of a general warranty deed, and was immediately filed for record in the deed records of Tarrant county, which was about seven days before the record of the deed of reconveyance from Crockett to Mrs. Hagler. After the conveyance to Harrison, he paid off and discharged the note for $15,000, then held by Mrs. Culberson.

James Harrison, claiming title to the property under the deed of conveyance last mentioned, instituted this suit in the form of trespass to try title against the First National Bank of Lewisville, Tex., Durwood McDonald, S. M. Conger, the Texas Bitulithic Company, and two other defendants, G. W. Garrett and P. S. Gray, who filed disclaimers of title and upon such disclaimers judgment was rendered against them. The First National Bank of Lewisville and the Texas Bitulithic Company had each recovered a judgment against Hagler, and abstracts of both of said judgments had been duly filed, recorded, and indexed in the records of deeds of Tarrant county after Hagler and wife had moved into and designated the property in controversy as their homestead, and while they were using it as such, and long prior to the simulated sale of the property by them to Crockett.

While the plaintiff's petition was in the form of trespass to try title, the real purpose of the suit was to clear the title to the property of those two apparent judgment liens. The judgment in favor of the First National Bank of Lewisville against Hagler was also against McDonald and Conger as sureties, and in order to preclude any claim of interest in the property by those sureties they were made codefendants with the bank. The contention made by plaintiff was that both the apparent judgment liens of the two defendants were null and void, because the property was the homestead of Hagler and wife at the time the abstracts of judgment were filed for record. In their answer, those two judgment holders, by proper pleadings, presented the claim that at the time Hagler moved into and designated the property as his homestead the lot upon which the house was built exceeded in value the constitutional limitation of $5,000, exclusive of improvements, and that such lot, to the extent of such excess in value, was subject to the judgment liens. Those defendants further alleged the abandonment of the property by Hagler and presented the claim that their respective liens attached to the whole of the property after such abandonment by rea-

son of the further fact that the deed from Hagler and wife to Crockett and the execution of the $15,000 note by Crockett in favor of Mrs. Hagler was a fictitious transaction, intended as a mortgage upon the homestead, and that James Harrison, as the agent of Mrs. Culberson at the time he acquired the note, knew of the fictitious character of the transaction, or that he had notice of facts sufficient to put a person of reasonable prudence on notice that such was the character of the transaction, and therefore the $15,000 lien was null and void.

Plaintiff, in addition to a general denial of the facts so alleged by those two defendants, further pleaded that the Texas Bitulithic Company was estopped to claim any lien upon the property, by reason of the fact that the debt owed by Hagler to it, which ripened into the judgment, was for paving the street in front of the property in controversy, and in which suit the Texas Bitulithic Company sought a personal judgment against Hagler, and also a lien upon the property, which it sought to foreclose, under and by virtue of an ordinance of the city of Ft. Worth, which imposed upon Hagler a debt for such paving, and also created a lien upon the property in controversy, if the same was not Hagler's homestead; that in defense to that action Hagler interposed the plea of exemption of the property from said lien by reason of the fact that it was the homestead of himself and family; that upon the trial of that suit a personal judgment was rendered in favor of the Texas Bitulithic Company against Hagler for the paving debt, but denying a foreclosure of the alleged paving lien by reason of the defense interposed that the same was a homestead and exempt from the alleged lien; that said judgment became a final judgment, and was never appealed from or set aside, but is still in force and effect.

Upon the trial of this suit, the allegations made by the plaintiff, presenting the plea of res adjudicata were sustained by proof, and by reason of that defense the court rendered judgment in favor of the plaintiff against the Texas Bitulithic Company, which, in effect, removed the apparent cloud on plaintiff's title by reason of the judgment lien in favor of that defendant.

In answer to special issues, the jury found that at the time Hagler and family moved into the property and designated it as a homestead the lot upon which the house was located was reasonably worth $8,000, and the improvements thereon were worth $16,000; that the value of the lot, exclusive of improvements, was worth one-third of the aggregate value of the lot and improvements, and the improvements were worth two-thirds of that aggregate value. Upon the verdict, the court rendered a judgment, establishing the lien of the First National Bank of Lewisville on the excess in value of the lot as found by the jury, and upon the further finding by the court that the property was incapable of partition in kind, and that there is now due by Hagler to the First National Bank of Lewisville, upon its judgment so abstracted, the sum of $809.15, drawing interest at the rate of 8 per cent. per annum, the court directed that the whole of the property be sold, and that $5,000 of the proceeds of the sale be set apart for the benefit of and paid to the plaintiff, James Harrison; that a sufficient amount of the balance be next applied to the satisfaction of the bank's prior judgment lien, not to exceed the sum of $3,000, and that the remainder be paid to plaintiff James Harrison. From that judgment plaintiff, Harrison, and defendant the Texas Bitulithic Company have both appealed. We will dispose of the appeal of the Texas Bitulithic Company first.

Article 16, §§ 50, 51, of our state Constitution, adopted in 1876, reads as follows:

"Sec. 50. The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void.

"Sec. 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

[1] We are of the opinion that the trial court did not err in sustaining the plea of res adjudicata, urged by plaintiff against the Texas Bitulithic Company and decreeing, in effect, that the judgment lien asserted by that company was null and void and not operative even upon the excess in value of the homestead lot as found by the jury. We are of

the opinion that the provision in section 50 of the Constitution, copied above, that "no mortgage, trust deed, or other lien on the homestead shall ever be valid, except, * * *" in connection with the former judgment in the suit of the Texas Bitulithic Company against J. D. Hagler, to the effect that the property in controversy was the homestead of Hagler, is conclusive against the claim of the lien by that company on the same judgment.

It is insisted by the Texas Bitulithic Company that its present suit to subject the property, or at all events the excess in the homestead, as found by the jury, is a different cause of action from that asserted in its former suit against Hagler, and that therefore it is not estopped from claiming such relief by reason of the former judgment, in which suit nothing but the paving lien, provided for in the charter of the city of Ft. Worth, was sought to be foreclosed; in other words, that the two causes of action were different, in that in the former suit the paving lien was asserted and sought to be foreclosed, while the present suit was to foreclose a judgment lien. We agree with the contention that the two causes of action are different in the respects mentioned. Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596; Philipowski v. Spencer, 63 Tex. 604; James v. James, 81 Tex. 373, 16 S. W. 1087; Converse v. Davis, 90 Tex. 462, 39 S. W. 277, and many other decisions which might be cited.

[2] But it is also well settled that whenever there is an issue directly involved and common to both causes, its determination in the first suit operates as an estoppel and bar to a litigation of it in the second suit. Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330; Nichols v. Dibrell, 61 Tex. 539; Hermann v. Allen, 103 Tex. 382, 128 S. W. 115.

As noted already, the issue whether or not the entire property in controversy was the homestead of Hagler and wife was directly involved in the former suit of the Texas Bitulithic Company, and was specifically determined in favor of the defendants in that suit, and upon that determination the plaintiff in that suit was denied any foreclosure of the paving lien asserted. That judgment, which has never been set aside or annulled, estops the Texas Bitulithic Company from now claiming that any part of the property was not Hagler's homestead. And as the entire property was Hagler's homestead, according to that judgment, the judgment lien of that company was as to that property absolutely void, under the provisions of our Constitution, when the abstract of judgment was filed, and, being void, it could not be given life and validity later, so as to become operative against the same property, or any supposed excess in it, by reason of its sub-

224 S.W.—18

sequent abandonment for homestead purposes by Hagler and his family. Inge and Boring v. Cain, 65 Tex. 75; Mayers v. Paxton, 78 Tex. 196, 14 S. W. 568; Moore v. Chamberlain (Sup.) 195 S. W. 1135; Kearby v. Cox (Com. App.) 211 S. W. 932.

[3] But notwithstanding the provisions of article 16, § 50, of the Constitution, quoted above, an innocent purchaser of a vendor's lien note, given in a simulated sale such as that of Hagler and wife to Crockett, acquires the right to enforce the lien, by reason of the rule which protects bona fide innocent purchasers for value. Graves v. Kinney, 95 Tex. 210, 66 S. W. 293.

[4] The jury found that at the time James Harrison, acting for Mrs. Culberson, purchased the $15,000 note he did not know that the deed to Crockett was a simulated transaction, designed as a mortgage on the homestead, but further found that he had notice of facts sufficient to put a person of ordinary prudence upon inquiry, which, if pursued, would have led to a discovery of the fact that the purported sale of the homestead to Crockett was a simulated transaction, designed to procure a loan upon the homestead. The finding last mentioned is challenged by plaintiff, Harrison, as being unwarranted by the evidence adduced; and that assignment is sustained. We have carefully reviewed the evidence cited by the two judgment lien claimants to support that finding of the jury, and are convinced that, construed most favorably to the judgment creditors, such evidence amounts to no more than a scintilla, suggesting a possible, but not probable, suspicion that the transaction between the Haglers and Crockett was not a bona fide sale of the homestead. It is true that the Haglers had not moved out of the homestead when James Harrison purchased the note, but he purchased it on the same day the deed was executed and before such a move had become reasonably possible. The testimony of James Harrison that he made no inquiry of Hagler as to whether the purported sale was genuine is immaterial, since at the time he purchased the note there was nothing to suggest to a reasonably prudent person that it was otherwise. Besides, before purchasing the note he employed an attorney to examine the title to the property, who approved it, and who testified, without contradiction as follows:

"I talked with Hagler with reference to moving and with reference to his selling out, and he told me they were going to move to Tom Green county, going on a ranch, and I thought that was a fact. I knew nothing about any arrangement between Hagler and Crockett."

[5] He further testified that he had no intimation that the deed from Hagler and wife to Crockett was not in fact just what it purported to be. James Harrison had been fa-

miliar with the property for several years, and also was well acquainted with Hagler. There is nothing in the evidence tending to controvert his testimony to the effect that he purchased the note, believing in good faith that the purported sale was a genuine and not a simulated sale, and we have found no evidence of his knowledge of any fact sufficient to excite the suspicion of a reasonably prudent person that the transaction was otherwise. Certain testimony of W. B. Harrison is cited to support the finding of the jury referred to. We deem it unnecessary to set that out, since the record shows without controversy that he, acting as the agent of the Haglers, negotiated the sale of the note to plaintiff Harrison and told the latter nothing that was in any manner calculated to excite suspicion that the deed was not a genuine conveyance. Indeed, we think his testimony, considered in connection with the fact that he likewise was a brother to Mrs. Culberson, for whom the note was purchased, conclusively established that he also believed that the transaction in question was a bona fide sale of the homestead. Even though it could be said that there was evidence of any fact or facts sufficient to put him on notice that the character of the transaction was otherwise, plaintiff, James Harrison, was not chargeable therewith, since he was ignorant of it. Eylar v. Eylar, 60 Tex. 315; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Hurt v. Cooper, 63 Tex. 362; Heidenheimer v. Stewart, 65 Tex. 323; Alstin's Ex'r v. Cundiff, 52 Tex. 465.

But we are of the opinion that the judgment lien of the First National Bank of Lewisville attached to the excess in value of the lot in controversy upon which the house in which Hagler and his family lived as their homestead, and which excess consisted of an undivided interest of three-eighths of said lot.

[6] Plaintiff, Harrison, insists that the filing of the abstract of judgment in favor of the defendant bank against Hagler never fixed a lien on even the excess in the homestead lot, and that in the absence of such a lien a valid title, unaffected by said judgment, passed to Harrison by the deed of conveyance to him, executed by Hagler and wife, even though the same was made after abandonment of the property as a homestead; in other words, the contention is that the entire property was impressed with the homestead character, and, until there was some kind of determination of the amount of excess and segregation of it from the undivided interest which was exempt, no lien could attach to any part of it. Plaintiff has cited the case of Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742, to show the changing history of the homestead exemption under the different Constitutions of the state, 'and decisions arising under former Constitutions, when such

exemption was not so liberal, as under that of the present Constitution of 1876. He has quoted from the opinion of the Supreme Court in Wood v. Wheeler, 7 Tex. 23, in which the suggestion is made that the proper method to subject the excess in the homestead to payment of debts of the head of the family, where the same could not be partitioned and the excess segregated from the exempted interest, would be for the court to enter a decree, giving the owner of the homestead the privilege within a reasonable period of time to pay off the debt, and, in event of his failure so to do, to order the entire property sold for the purpose of partitioning the proceeds. The decisions in North v. Shearn, 15 Tex. 175, Paschal v. Cushman, 26 Tex. 74, and Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475, are cited as approving that suggestion so made in the former decision. All of those were suits in equity to subject the excess in the homestead to the payment of debts. In none of them was there an assertion of any character of lien upon such excess, and the question whether or not a lien could be fixed upon such excess was not directly involved; however, it was held in each case that such excess in the homestead, over and above the constitutional exemption, could be subjected to the payment of debts, and if it became necessary to sell the entire homestead for the purpose of segregating the value of the excess from that of the exempted portion, the same could be done. Even such a procedure would result in a forced sale of the exempted interest in the homestead, not for the purpose of subjecting that interest to the payment of debts, but only for the purpose of partition.

Appellant has also cited Lubbock v. McMann, 82 Cal. 226, 22 Pac. 1145, 16 Am. St. Rep. 108, and other decisions from the same state, and also the case of Traders' National Bank v. Schorr, 20 Wash. 1, 54 Pac. 543, 72 Am. St. Rep. 17, by the Supreme Court of the state of Washington, and 1 Freeman on Execution (2d Ed.) 249. In the last-cited authority, the following is said:

"The lien of a judgment and of an execution is almost universally regarded as arising from the right to sell property thereunder. And hence, where the right of sale cannot be asserted, the existence of the lien must be denied."

But in the concluding portion of the same section, the following is said:

"In some of the states the premises occupied as a homestead may all be embraced in the declaration of claim of homestead, though their value is far in excess of the amount which the statute permits to be retained as exempt. In the event of the levy of an execution on such premises, certain pleadings designated in the statute may be taken for the purpose of setting aside to the debtor the amount to which he is entitled, and subjecting the balance to

(224 S.W.)

execution. In such a case, what is the effect of judgment liens? Do they attach so as to entitle their holders to claim the proceeds of the homestead in excess of the amount which the debtor may retain? It has been said that in such circumstances 'there is no lien of the judgment until the levy of an execution.' From this conclusion we dissent. A judgment lien attaches to all the real property of the defendant not exempt from execution. That part of the property claimed as a homestead in excess of the amount which the debtor may retain as exempt is at all times subject to execution and to forced sale, and there is therefore no reason why creditors may not with respect thereto obtain the benefits both of judgment and attachment liens."

The case of Vanstory v. Thornton, decided by the Supreme Court of North Carolina, is reported in 112 N. C. 196, 17 S. E. 566, 34 Am. St. Rep. 483. In a note following that decision, appearing on page 505 of the same volume (34 Am. St. Rep.) there is a citation of several decisions from different states, in which it was held that a judgment lien would attach to the excess in value of the homestead exemption. It is also pointed out that the rule is exactly contrary in California, but that the California decisions are against the decisions of the majority of states. It might be added that it appears from the California decisions that in that state there is a statute which prescribes a method of procedure to subject the excess in value of the homestead to the payment of debts, and that those decisions are predicated upon that statute; the purport of those decisions, as we construe them, being that since the statute gives the creditor the right to bring a suit in equity to set apart such excess and to subject it to sale for the purpose of paying debts, it follows, by implication, that such is the creditor's only remedy, and therefore a judgment creditor has no lien on such excess. In this state, the statute prescribed a method of setting apart for levy of an execution the excess in a rural homestead over and above 200 acres exempted from liens and forced sale under the Constitution, but does not prescribe any method of setting apart and subjecting to the payment of debts the excess in an urban homestead.

In the case of General Bonding & Casualty Ins. Co. v. Trabue, 174 S. W. 689, the Court of Civil Appeals of the Sixth District affirmed a judgment foreclosing a mortgage lien upon the excess in a homestead of the mortgagor, but the foreclosure was upon the undivided interest in the entire property to the extent of the excess value which was fixed upon a percentage basis, and that undivided interest only was ordered sold under the foreclosure, and in disposing of the case the court used the following language:

"As the excess, which is all that is ordered sold, is not exempt as a part of the homestead, it may be subjected to the lien. And the excess being a subject-matter of sale and disposition, the right of the creditor to have sale of the same is not abridged, it is believed, by the fact that such excess or residue may be an undivided parcel of the property. The purchaser under such sale acquires no right or interest in the exempt portion of the property. The purchaser becomes a tenant in common to the extent of his interest with the owner of the homestead property, and this situation results from the designation of an excessive homestead. The purchaser and the owner of the homestead property have a means of partitioning the property in proper equitable proceedings according to the facts and equities of the particular case."

We concur in the doctrine so announced. The fact that in the present suit the entire property, instead of an undivided interest, was ordered sold and the proceeds partitioned between plaintiff Harrison and the defendant bank makes no difference, because of the fact that the court found that the property was incapable of a partition in kind, and a sale of the whole was therefore necessary for the purpose of partition.

It is undoubtedly true that by article 5616, V. S. Civ. Stats., the lien given by the record of an abstract of judgment in accordance with the provisions of articles 5612 to 5615, inclusive, attaches to an undivided interest in realty, as well as to the full title. Franke v. Lone Star Brewing Co., 17 Tex. Civ. App. 9, 42 S. W. 861. And on principle we can perceive no valid reason why such a lien should not attach to the undivided excess in a homestead lot over and above the interest therein which is exempt as a homestead.

Accordingly, we are of the opinion that the trial court did not err in the decree establishing a lien in favor of the defendant bank upon the excess found by the jury in the homestead of Hagler and family, and foreclosing such lien.

[7] But error has been assigned to that portion of the judgment directing that out of the proceeds of the sale of the entire property, both lot and improvements, only $5,000 should be first set apart to plaintiff, Harrison, and that out of the balance remaining the bank's debt should be next satisfied, provided no more than $3,000, which was the extent of excess found by the jury, should be used for that purpose, and that the balance remaining after satisfaction of the debt be paid over to the plaintiff, Harrison. As noted already, the excess in the homestead lot, exclusive of improvements, was valued at $3,000, which was three-eighths of the entire value of the lot upon which the improvements were situated, and only one-eighth of the aggregate value of the lot and improvements, to wit, $24,000. In the absence of any proof that the lot and improvements thereon are not now worth the respective values found by the jury, and assuming that the improvements will not be destroyed by fire

prior to the sale of the entire property under the foreclosure decree, it might perhaps be said that the court erred in not setting apart to plaintiff, Harrison, a greater sum than $5,000 before the application of any such proceeds to the bank's debt. We shall not undertake to discuss that question. We deem it sufficient to say that, if there was error in the partition of the proceeds by the trial court in the manner adopted, such error was harmless, in view of the fact that it clearly appears that, computed on any basis, even upon the theory that seven-eighths of the entire proceeds of the lot and improvements should be first set apart to plaintiff, Harrison, and the bank's debt satisfied out of the balance remaining, there would still be a greater balance than necessary to satisfy the bank's debt, which was less than $1,000; the record containing no suggestion of proof that the property is not worth the respective values fixed by the jury.

For the reasons stated, the judgment is in all things affirmed.

### On Motion for Rehearing.

Our attention is now, for the first time, called to Marks v. Bell, 10 Tex. Civ. App. 587, 31 S. W. 699 (writ of error denied by the Supreme Court), and Glasscock v. Stringer, 33 S. W. 677, in which it was held that a duly recorded judgment lien against the owner of land which is exempt as a homestead will attach to the property when it ceases to be a homestead, if at such time it is still the property of the judgment debtor. And to those decisions may be added that of Bradley v. Janssen, 93 S. W. 506 (writ of error denied).

[8] It thus appears that by the decisions of this state it seems to be now well settled that a judgment lien does not come within the operation of section 50, article 16, of the Constitution of our state, which provided that "no mortgage, trust deed, or other lien on the homestead shall ever be valid," with certain stated exceptions not applicable here, and the decisions cited in our opinion on original hearing, to the effect that all such attempted liens are absolutely void from their inception.

[9, 10] We adhere to the conclusion reached upon original hearing, to the effect that the former judgment in the suit of the Texas Bitulithic Company against Hagler, decreeing that the entire property was Hagler's homestead, estopped that company from claiming in the present suit that there was then an excess over and above the homestead exemption. But notwithstanding that conclusion, under the decisions cited, both judgment liens did attach to all of the property as soon as it was abandoned as Hagler's homestead. As pointed out in the original opinion, contemporaneously with the execution of the fictitious deed of conveyance to Crockett, Crockett reconveyed the property to Mrs.

Cora B. Hagler as her separate estate. Since the deed to Crockett was a nullity, he had no power to convey title to Mrs. Hagler; in other words, he could not convey title by a deed to her if no title was vested in him. Kearby v. Cox (Com. App.) 211 S. W. 932. Such title as Harrison acquired was from J. D. Hagler and wife jointly, and he could not deraign title through the deed to Mrs. Hagler from Crockett. The title thus acquired by Harrison was owned by J. D. Hagler and wife as community property at the time they abandoned the property as their homestead, and both judgment liens attached to it immediately upon such abandonment and prior to the conveyance by the Haglers to Harrison, which was dated more than two months after such abandonment.

[11] Another contention is now urged, for the first time, that the judgment lien in favor of the Texas Bitulithic Company was superior to the right acquired in the property by Harrison by his purchase of it from Hagler. In reply to that contention, Harrison invokes the equitable rule of subrogation, and insists that by reason of his payment to Mrs. Culberson of the $15,000 note, which Hagler owed her, and which was superior to the judgment lien, he should be given the same protection to the extent of such payment as would have been accorded to Mrs. Culberson if her note had not been so paid and she were suing to foreclose that lien.

Harrison testified as follows:

"The consideration for Mr. Hagler conveying the property to me was the assumption of that note [the $15,000 note in favor of Mrs. Culberson] and my payment of the taxes. I paid the note to Mrs. Culberson; I paid it at different times; I think I made in three different payments of $5,000 each."

As attorney in fact for Mrs. Sallie H. Culberson, Harrison executed a release of the lien upon the property formerly held by Mrs. Culberson to secure the payment of the $15,000 note. The release was dated February 13, 1918, and was later filed for record. Relative to the execution of that release, Harrison testified as follows:

"The way I came to execute the release of the vendor's lien that was executed by me, as shown by the abstract, was for the purpose of clearing the title in order to make a sale to Mr. Lee Bivens at a price of $21,000, which he was to pay for the place. I did not have any other purpose in executing that release."

There was no proof of any character that at the time he paid the note to Mrs. Culberson, or at any other time, there was any agreement on the part of Mrs. Culberson, or any one else, that he should be subrogated to the rights of Mrs. Culberson in said note and the lien securing the same. The testimony of Harrison himself shows that at the time he purchased the property from Hagler

he had actual notice of the two judgment liens against the property. He also had constructive notice of both liens which were then of record; and, since he assumed the payment of the note to Mrs. Culberson as a part of the consideration for his purchase of the property, and later paid off and discharged the note, we are of the opinion that he is not entitled to be subrogated to the lien of Mrs. Culberson as against the two judgment liens. McDowell v. Jones Lumber Co., 42 Tex. Civ. App. 260, 93 S. W. 476; Hatton v. Bodan Lumber Co., 57 Tex. Civ. App. 478, 123 S. W. 163; I. & G. N.'Ry. Co. v. Concrete Inv. Co., 201 S. W. 718; Lion Bonding & Surety Co. v. First State Bank, 194 S. W. 1012; First State Bank, etc., Co. v. Vardeman, 188 S. W. 695; Pomeroy's Equity Jurisprudence, vol. 3, § 1213 (3d Ed.); 37 Cyc. 451; 25 R. C. L. § 38, p. 1354.

The case of Silliman v. Gammage, 55 Tex. 365, is the leading case cited by appellant Harrison to support his claim of right of subrogation. But we think that case is distinguishable from the authorities cited above. In that case, it appears that a mortgagor, in order to save the expense of a foreclosure, conveyed the land covered by the mortgage to the mortgagee, in good faith and for a fair price, although the price was less than the mortgage debt, receiving a surrender of the note and mortgage. Under such circumstances, it was held that for the protection of the mortgagee, as against a subsequent lien, his lien should be considered as still subsisting and not extinguished by its release. On principle, we think that decision is analogous to those that hold that the owner of the property who pays off an incumbrance for the protection of his title, and which incumbrance he did not assume as a part of the consideration for his purchase, is entitled to be subrogated to the rights of the lien creditor.

Under the authorities cited, we conclude that the title acquired by Harrison was subordinate to both of the judgment liens. Accordingly, the judgment of the trial court will be so reformed as to decree a foreclosure of the judgment lien of the Texas Bitulithic Company, as well as that of the First National Bank of Lewisville, upon the entire property, and the proceeds of the sale of the same under the foreclosure will be distributed as follows:

[12] First: One-eighth of the proceeds will be applied to the payment of the judgment in favor of the First National Bank of Lewisville, since that creditor has a first lien upon the excess in the homestead, which, according to the verdict of the jury, was of the value of $3,000, or one-eighth of the value of the entire property.

Second: The balance remaining after satisfaction of the bank's lien in full out of the one-eighth of the proceeds of the sale shall be applied first to the payment of the judgment of the Texas Bitulithic Company, and the remainder shall be paid over to plaintiff, James Harrison.

Third. If one-eighth of the proceeds of the sale of the property shall be insufficient to pay the judgment of the bank, then the remaining seven-eighths of such proceeds shall be first applied to the satisfaction of the judgment of the Texas Bitulithic Company before the satisfaction of the balance of the bank's judgment, since the judgment lien of the Texas Bitulithic Company was filed prior to the filing of the bank's lien, but the balance of the proceeds of said seven-eighths interest, after the satisfaction of the judgment of the Texas Bitulithic Company, shall be applied first to the payment of any unpaid balance of the judgment of the bank remaining after applying one-eighth of the proceeds to the payment of that judgment; in other words, both said judgments shall be paid in full out of such proceeds to the exclusion of Harrison's rights to any such proceeds, but after satisfaction of both of said judgment liens all of the balance of the proceeds of the sale of the property shall be paid over to Harrison.

Our opinion on original hearing is corrected in accordance with these conclusions.